# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUMANA NAGARWALA,
FAKHRUDDIN ATTAR,
FARIDA ATTAR, and
FATEMA DAHODWALA,

    Defendants.

_____

No. 17-cr-20274

Honorable Bernard A. Friedman

**MOTION TO DISMISS
FOURTH SUPERSEDING
INDICTMENT**

## ORAL ARGUMENT REQUESTED

Fakhruddin Attar, M.D., through his attorney Mary Chartier; Jumana Nagarwala, M.D., through her attorney Shannon Smith; Farida Attar, Ph.D., through her attorney Matthew R. Newburg; and Fatema Dahodwala, through her attorney Brian Legghio, move that this Court dismiss the fourth superseding indictment. The government is acting with extreme prosecutorial vindictiveness in issuing yet another superseding indictment nearly half a decade after charges were first issued. The alleged evidence used to support these new charges was known to the government at the inception of the case, yet new charges

were issued on the cusp of the remaining count being dismissed. Further,

the basis of the charges in the new indictment violates the law of the case

doctrine. Counsel has sought, but has not received, concurrence from the

government. Accordingly, Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms.

Dahodwala respectfully request that this Court order oral argument and

grant their motion to dismiss.

Respectfully submitted,

Dated: 05/20/2021            /s/MARY CHARTIER
                            Mary Chartier
                            Attorney for Fakhruddin Attar, M.D.

Dated: 05/20/2021            /s/SHANNON SMITH
                            Shannon Smith
                            Attorney for Jumana Nagarwala, M.D.

Dated: 05/20/2021            /s/MATTHEW R. NEWBURG
                            Matthew R. Newburg
                            Attorney for Farida Attar, Ph.D.

Dated: 05/20/2021            /s/BRIAN LEGGHIO
                            Brian Legghio
                            Attorney for Fatema Dahodwala

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

———————————————

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JUMANA NAGARWALA,
FAKHRUDDIN ATTAR,
FARIDA ATTAR, and
FATEMA DAHODWALA,

     Defendants.

———————————————

No. 17-cr-20274

Honorable Bernard A. Friedman

**BRIEF IN SUPPORT OF
MOTION TO DISMISS
FOURTH SUPERSEDING
INDICTMENT**

### ORAL ARGUMENT REQUESTED

Fakhruddin Attar, M.D., through his attorney Mary Chartier; Jumana Nagarwala, M.D., through her attorney Shannon Smith; Farida Attar, Ph.D., through her attorney Matthew R. Newburg; and Fatema Dahodwala, through her attorney Brian Legghio, respectfully submit this brief in support of their motion to dismiss the fourth superseding indictment.

### <u>INTRODUCTION</u>

The government has had all the information that it is relying on for these new counts in its *fifth* indictment for nearly half a decade. Yet it

3

conveniently chose to issue yet another superseding indictment with new counts following the filing of sound and compelling motions to dismiss the last remaining count in the prior indictment. Loss after loss, the government has continued to seek new indictments in its quest for convictions. These desperate attempts to convict violate the rights of Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala as the government toys with each defendant by continuing to supersede its prior indictments to compensate for its prior failings. The government's ulterior motives are patently clear with the conspicuous timing of the latest indictment. Further, the basis of these charges in the new indictment violates the law of the case doctrine. Thus, this Court should dismiss the fourth superseding indictment.

## STATEMENT OF FACTS

This case has formally been in existence for over four years, with a complaint initially issued against Dr. Nagarwala on April 12, 2017. (2:17-mj-30182, RE 1, Page ID # 1.) That complaint alleged that there was probable cause to believe that Dr. Nagarwala committed the following:

- female genital mutilation (FGM), in violation of 18 U.S.C. § 116;

- transportation with the intent to engage in criminal sexual activity and conspiracy to engage in this conduct, in violation of 18 U.S.C. §§ 2423(a), (e); and

- making a false statement to a federal agent, in violation of 18 U.S.C. § 1001.

A complaint was then issued against Dr. Attar and Mrs. Attar on April 20, 2017. (2:17-mj-30197, RE 1, Page ID # 1.) That complaint alleged that there was probable cause to believe the following offenses occurred:

- FGM, in violation of 18 U.S.C. § 116;

- Conspiracy, in violation of 18 U.S.C. § 371; and

- Aiding and abetting, in violation of 18 U.S.C. § 2.

The first indictment issued on April 26, 2017. (RE 16, Page ID # 91.) This indictment contained seven counts and listed three defendants—Dr. Nagarwala, Dr. Attar, and Mrs. Attar. (RE 16, Page ID # 91-103.) The allegations were as follows:

- Count one charged Dr. Nagarwala, Dr. Attar, and Mrs. Attar with conspiracy to commit FGM, 18 U.S.C. § 371;

- Counts two and three charged Dr. Nagarwala, Dr. Attar, and Mrs. Attar with FGM, 18 U.S.C. §§ 116 and 2;

- Count four charged Dr. Nagarwala and Dr. Attar with conspiracy to transport a minor with intent to engage in criminal sexual activity, 18 U.S.C. §§ 2423(a), (e);

- Count five charged Dr. Nagarwala, Dr. Attar, and Mrs. Attar with conspiracy to obstruct an official proceeding, 18 U.S.C. §§ 1512(c)(2), (k). The basis for this count was that from April 10, 2017 through April 21, 2017, the three named parties allegedly agreed to make false statements to law enforcement agencies and other investigating agencies about whether the FGM procedures took place, as well as instructed others to make false statements regarding FGM and took steps to delete evidence of communications between co-conspirators; and

- Count six charged Dr. Nagarwala and count seven charged Dr. Attar with making a false statement to a federal officer, 18 U.S.C. § 1001. The underlying allegation was that on or about April 10, 2017, Dr. Nagarwala and Dr. Attar made a materially false, fictitious, and fraudulent statement and representation in a matter

within the jurisdiction of the executive branch of the government. Dr. Nagarwala allegedly told a special agent that she had never been present when FGM was performed on any minor children and that she had no knowledge of FGM being performed. Dr. Attar allegedly told special agents that FGM procedures had not taken place at his medical clinic by Dr. Nagarwala.

At the time of this original indictment, the government had in its possession all of the named parties' statements, as well as phone calls and text messages where the named parties communicated with each other and others known to the government. This is reflected in numerous counts in the indictment.

About two months later, on June 21, 2017, the government issued its first superseding indictment. (RE 58, Page ID # 507.) This indictment added three new defendants, including Ms. Dahodwala. (RE 58, Page ID # 507.) The first superseding indictment also added two more counts of FGM, but those were the only new charges. (RE 58, Page ID # 514.) The charges in this first superseding indictment were as follows:

- All named parties were charged with one count of conspiracy to commit FGM, 18 U.S.C. § 371, and four counts of FGM, 18 U.S.C. §§ 116 and 2;

- Dr. Nagarwala and Dr. Attar were still charged with one count of conspiracy to transport a minor with intent to engage in criminal sexual activity, 18 U.S.C. §§ 2423(a), (e);

- Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala were charged with one count of conspiracy to obstruct an official proceeding, 18 U.S.C. §§ 1512(c)(2), (k); and

- Dr. Nagarwala and Dr. Attar were both charged with one count of making a false statement to a federal officer, 18 U.S.C. § 1001.

On September 13, 2017, the government issued the second superseding indictment. (RE 153, Page ID # 1266.) This indictment added two more defendants to the case. (RE 153, Page ID # 1266.) The first seven counts were the same in this indictment as the previous one:

- Conspiracy to commit FGM, 18 U.S.C. § 371;

- Four counts of FGM, 18 U.S.C. §§ 116 and 2;

- Conspiracy to transport a minor with the intent to engage in criminal sexual activity, 18 U.S.C. §§ 2423(a), (e); and

- Conspiracy to obstruct an official proceeding, 18 U.S.C. § 1512(k).

It is important to note here that the government removed the individual counts of making a false statement to a federal officer that Dr. Nagarwala and Dr. Attar were both charged with in all previous indictments, so that charge was no longer present in the case. (RE 153, Page ID # 1266-1276.)

After the second superseding indictment was entered, Dr. Nagarwala and Dr. Attar moved to dismiss count six, which was conspiracy to transport a minor with the intent to engage in criminal sexual activity. (RE 171, Page ID # 1338.) This charge carried a sentence of a minimum of ten years to a maximum of life imprisonment. 18 U.S.C. § 2423(a). This Court granted the motion to dismiss count six—a count that entirely depended on the FGM allegations—holding that the indictment alleged no facts which, if proven, would establish that Dr. Nagarwala and Dr. Attar violated 18 U.S.C. § 2423(a) or (e). (RE 268, Page ID # 1915, 1917.) Thus, there were six remaining counts left in the second superseding indictment, out of seven. The government decided to appeal this decision to the United States Court of Appeals for the Sixth Circuit and then later voluntarily dismissed the appeal. (18-1156; RE 9, Page ID # 1; RE 10-2, Page ID # 1.)

A few months later, on July 29, 2018, Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala moved to dismiss counts one through five of the second superseding indictment. (RE 307, Page ID # 2080.) These counts were conspiracy to commit FGM and FGM. (RE 307, Page ID # 2082.)

While this motion was pending, the government issued yet another indictment—the third superseding indictment—on September 12, 2018. (RE 334, Page ID # 2461.) The indictment contained all the same defendants as the second superseding indictment. (RE 334, Page ID # 2461.) This indictment had the following counts:

- Conspiracy to commit FGM, 18 U.S.C. § 371;

- FGM, 18 U.S.C. §§ 116 and 2—the indictment added one more count of FGM than what was in the previous indictment;

- Conspiracy to travel with intent to engage in illicit sexual conduct, 18 U.S.C. §§ 2423(b), (e), against Dr. Nagarwala; and

- Conspiracy to obstruct an official proceeding, 18 U.S.C. § 1512(k).

The new charge of conspiracy to travel with the intent to engage in illicit sexual conduct was based on the same allegations that the government had previously alleged in the second superseding indictment

and was based on allegations previously known to the government. However, this was simply a new theory after the prior count was dismissed.

On November 20, 2018, this Court granted the motion to dismiss counts one through five of the second superseding indictment, where it held that the FGM statute was unconstitutional, and Congress had no authority to pass the statute criminalizing FGM. (RE 370, Page ID # 3102-3103). Because these counts were dismissed, the only remaining counts of the third superseding indictment were count seven, conspiracy to travel with intent to engage in illicit sexual conduct against Dr. Nagarwala, and count eight, conspiracy to obstruct an official proceeding against the four remaining defendants—Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala. (RE 334, Page ID # 2471-2472.)

After this latest motion was granted, the government appealed the decision. Just as with its previous appeal, the government also decided to voluntarily withdraw the appeal, conceding that its stance was wrong yet again. (19-1015, RE 40, Page ID # 1.) In fact, the government was so adamant in this belief that it strongly opposed the United States House of Representatives intervening in the appeal, which would have created

11

a situation where two branches of the same government were fighting against each other. (19-1015, RE 44, Page ID # 1.)

With only two counts remaining in the third superseding indictment, Dr. Nagarwala moved to dismiss count seven, conspiracy to travel with intent to engage in illicit sexual conduct, and this Court dismissed count seven of the third superseding indictment. (RE 428, Page ID # 3336, 3340.) After this count was dismissed on March 4, 2020, all that was left was one count of conspiracy to obstruct an official proceeding against Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala, stemming from communications on or about April 10, 2017. (RE 334, Page ID # 2472.)

The defense then submitted three motions to dismiss that would have taken care of the final remaining count, as well as a motion to suppress all the wiretapped communications the government relied on in their indictments, which would completely gut the government's case, if granted. (RE 453, Page ID # 3465; RE 454, Page ID # 3475; RE 455, Page ID # 3488; RE 466.) After these motions were filed, the government requested, and was granted, more time to respond to the dispositive motions to dismiss. (RE 460, Page ID # 3532.) Yet this request was a ploy.

Instead of using this time to respond to the motions, the government convened a grand jury to issue more charges five days before its motion responses were due.

On March 11, 2021, almost four years after the case started—and seven dismissed counts later—the government issued its fourth superseding indictment. (RE 470, Page ID # 3763.) Dr. Nagarwala, Dr. Attar, Mrs. Attar, and Ms. Dahodwala are the only named defendants. (RE 470, Page ID # 3763.) Now—on its fifth try at an indictment—count one charges all four defendants with conspiracy to make false statements, in contravention of 18 U.S.C. § 371. (RE 470, Page ID # 3764.) The indictment alleges that beginning in or around May 2016 and continuing through on or about April 10, 2017, the defendants knowingly and willingly conspired to make "false, fictitious, and fraudulent statements and representations as to material facts in a matter within the jurisdiction of the executive branch" of the United States government, in violation of 18 U.S.C. § 1001. (RE 470, Page ID # 3764.) Count two charges Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala with making false statements, in contravention of 18 U.S.C. § 1001, for telling an FBI officer that *khatna* was not performed in their community, when they

knew that it was. (RE 470, Page ID # 3768.) Notably, the government claims that khatna is "female genital mutilation." (RE 470, Page ID # 3763.)

Count three charges Dr. Nagarwala, Dr. Attar, and Mrs. Attar with conspiracy to tamper with a witness, pursuant to 18 U.S.C. § 1512(k), when they allegedly knowingly and willfully conspired to "intimidate, threaten, and corruptly persuade" others and each other to engage in misleading conduct, "with the intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States," "of information relating to the commission and possible commission of a Federal offense, namely FGM." (RE 470, Page ID # 3769-3770.) This count is closely related to the last remaining count of the third superseding indictment, and both of those counts are in violation of the same statute—18 U.S.C. § 1512(k). Of note here, language referencing FGM and khatna—which the government claims are identical processes and are violations of federal law—comes after this Court has already held that the law criminalizing FGM is unconstitutional.

Count four charges Dr. Nagarwala and Mrs. Attar with tampering with a witness, in contravention of 18 U.S.C. § 1512(b)(3), for alleged

conduct related to April 10, 2017, regarding whether FGM was taking place. (RE 470, Page ID # 3771-3772.) Finally, count five charges Dr. Nagarwala, Dr. Attar, and Mrs. Attar with allegedly tampering with a witness, under 18 U.S.C. § 1512(b)(3), for conduct also related to April 10, 2017, regarding whether FGM was taking place. (RE 470, Page ID # 3772-3773.) The information relied on for *every single count* listed in the fifth indictment was derived from evidence that the government had *at the inception of the case* well over four years ago, and the charges in the new indictment are based on the very same conduct mentioned in previous indictments. As Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala have won their motions and dismissals, the government has issued new indictments based on the same evidence and purported conduct. This has been a pattern throughout this case, and this latest instance makes it abundantly clear that the government's conduct meets the legal definition of "prosecutorial vindictiveness." Thus, this latest indictment must be dismissed based on the conduct of the government.

## ARGUMENT

I.   **The filing of the fourth superseding indictment is retaliation for the defense successfully decimating the government's case by having previous counts systematically dismissed and also for being on the brink of having the last remaining count dismissed, which would leave the government with no convictions for any of the eight defendants charged.**

The government is engaging in vindictive prosecution against Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala. While a prosecutor has broad discretion in deciding whom to prosecute and which charges to bring, this is not unfettered discretion. *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001). "At a minimum, prosecutorial discretion is restrained by the Due Process Clause, which prohibits the prosecution from punishing a defendant for exercising a protected statutory or constitutional right." *United States v. Ladeau*, 734 F.3d 561, 566 (6th Cir. 2013). When a prosecutor does in fact punish a defendant for exercising a right, it is coined "prosecutorial vindictiveness," and the lack of bad faith or malice on the part of the prosecutor is immaterial to a determination of a presumption of vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 376; 102 S. Ct. 2485; 73 L. Ed. 2d 74 (1982). There are two different types of prosecutorial vindictiveness:

A defendant can show "actual vindictiveness," by producing "objective evidence that a prosecutor acted in order to punish the defendant for standing on his legal rights," or the Court can find a presumption of vindictiveness by applying the "realistic likelihood of vindictiveness" standard which focuses on the prosecutor's "stake" in deterring the exercise of a protected right and the unreasonableness of his actions. [*United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005).]

For a court to find that there was a "reasonable likelihood of vindictiveness" and presume an improper vindictive motive, the defendant must establish that 1) the prosecutor had some stake in deterring the defendant's exercise of his rights and 2) the prosecutor's conduct was somehow unreasonable. *Ladeau*, 734 F.3d at 566. "[P]rosecutorial vindictiveness can potentially be found in the pre-trial addition of charges following pre-trial assertions of protected rights." *United States v. Suarez*, 263 F.3d 468, 479 (6th Cir. 2001). "The government bears the burden of rebutting the presumption with objective, on-the-record explanations such as governmental discovery of previously unknown evidence or previous legal impossibility." *Ladeau*, 734 F.3d at 566 (citations and quotations omitted). "By carefully analyzing the circumstances, the district court can make the determination whether there existed a realistic likelihood of vindictiveness. The standard itself, however, is an objective one—

17

whether a reasonable person would think there existed a realistic likelihood of vindictiveness." *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980). These cases are fact specific, and whether there is prosecutorial vindictiveness will be determined on a case-by-case basis. *Ladeau*, 734 F.3d at 567.

In *Ladeau*, the defendant was indicted on one count of possessing child pornography, which carried a sentencing range of zero to ten years imprisonment. *Id.* at 564. Subsequently, the defendant moved to suppress evidence of possession, and after that motion was granted, there was no further admissible evidence the government could rely on. *Id.* Then, the government obtained a superseding indictment for one count of conspiracy to *receive* child pornography. *Id.* This was based on evidence that the government had in its possession before the initial indictment was ever issued. *Id.* The new count raised the sentence range to five to twenty years' incarceration. *Id.*

With this information, the defendant moved to dismiss the superseding indictment. *Id.* The defendant argued that because the new charge was not based on any new evidence that the government obtained after the initial indictment, "the government could have charged him

with the harsher receipt offense at any point during the thirteen months in which his prosecution had been pending, but had chosen to do so only after [the defendant] won his suppression motion." *Id.* at 565. The district court agreed, dismissing the indictment because "the government's decision to change to a receipt theory warranted a presumption of prosecutorial vindictiveness, inasmuch as there was a realistic likelihood that [the defendant] was being charged with a more serious offense in retaliation for his successful suppression motion." *Id.* at 564.

The United States Court of Appeals for the Sixth Circuit held that the district court did not abuse its discretion in granting the motion to dismiss the superseding indictment. *Id.* The Sixth Circuit reasoned there was little reason to suspect that the prosecutor's view of the defendant's case "changed significantly between the two indictments, given that the government already possessed all of the relevant evidence that supported the superseding indictment well before procuring the first indictment." *Id.* at 568. Because the only substantive action between the two indictments was the defendant's successful motion to suppress, there was nothing to indicate the prosecutor's decision was based on "unexpected changes or an incomplete initial grasp of the pertinent issues or facts."

19

*Id.* Also, the burden that the successful suppression motion placed on the government was significant because crucial evidence was suppressed, which destroyed the government's possession case and made a conviction on the initial charge impossible. *Id.* at 568-569.

> The prosecutor acted unreasonably because of the following:

> The charge in the superseding indictment was based on the same conduct underlying the charge in the initial indictment, the prosecution obtained no evidence supporting the superseding indictment that it did not already possess prior to obtaining the initial indictment, and the conspiracy-to-receive count that was charged in the superseding indictment carries longer mandatory minimums and maximums than the possession count that was initially charged. [*Id.* at 570.]

There was no reasonable explanation for the prosecution to switch from a *possession* theory to a *receipt* theory. *Id.* at 571. There was no new revelation or discovery to support the government's sudden shift to a receipt theory from a possession theory. *Id.* Just as in *Ladeau*, there is no reasonable explanation for the government's new charges in its fifth indictment other than the government was standing on the precipice and watching its last remaining count about to be dismissed.

A. **The government has a significant stake in deterring the named parties from exercising their protected rights because it is desperate to obtain a conviction after years of time and money being spent on this investigation and prosecution.**

When a prosecutor is forced to repeat what he thought had already been correctly done or where duplicative expenditures of prosecutorial resources are required, then the government's stake in discouraging the defendant's exercise of rights may be considerable. *Ladeau*, 734 F.3d at 569-570; *United States v. Roach*, 502 F.3d 425, 444 (6th Cir. 2007). When crucial evidence is suppressed, thereby eviscerating the government's case, or where the government would have to restart the prosecution from scratch because a successful motion eliminates the ability to prosecute charges alleged in the initial indictment, the government also has a stake in deterring the defendant's exercise of a right. *Ladeau*, 734 F.3d at 569. One cannot argue that the prosecutorial stake in a pre-trial setting is so de minimus that there can never be a "realistic likelihood of vindictiveness" in a pre-trial setting because each situation will necessarily turn on its own facts. *Andrews*, 633 F.2d at 454.

Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala had a right to file their pre-trial motions to dismiss the charges and suppress the evidence against them. See *United States v. Moon*, 513 F.3d 527, 535

(6th Cir. 2008). With each successful dismissal, the government was forced to restart its case. These were not instances where the government could "resuscitate its prosecution on charges identical to those originally brought in the initial indictment simply by properly alleging" a specific element. *Ladeau*, 734 F.3d at 568; see also *Moon*, 513 F.3d at 533, 536. Instead, the government had to come up with new charges because those dismissed were either found unconstitutional or the facts, taken as true as alleged by the government, did not support the charged offenses as a matter of law. Moreover, duplicative expenditures of prosecutorial resources began to pile up. As the defense became successful in its motions, not only did the government choose to "respond" to those motions by seeking superseding indictments, it began adding additional Assistant United States Attorneys to the case. The prosecution team— which started with just two prosecutors—is now double that with four Assistant United States Attorneys appearing on the record on behalf of the government and other Assistant United States Attorneys making select appearances.

With only one count remaining, the government was on the threshold of seeing that count dismissed. The named parties filed three

sound motions to dismiss the last remaining count, which would have resulted in the government losing its ability to proceed on this last remaining count. There would be nothing left in the indictment. The government would then have no convictions to show for its multi-year quest against the named parties. The government made this case public with a particularly pointed press release on April 13, 2017, so it would then be left with a public record that it had made errors in judgment and law from the beginning.

The government knew that the motions to dismiss would have completely eviscerated the prosecution of the remaining count, so the government took action by issuing yet another superseding indictment to try to salvage its case. This would be the fifth indictment in this case. The timeline is as follows:

1. April 12, 2017—Complaint against Dr. Nagarwala

2. April 20, 2017—Complaint against Dr. Attar and Mrs. Attar

3. April 26, 2017—First Indictment

4. June 21, 2017—First Superseding Indictment

5. September 30, 2017—Second Superseding Indictment

6. September 12, 2018—Third Superseding Indictment

### 7. March 10, 2021—Fourth Superseding Indictment

The government has continued to supersede indictments and change its theory based on *the same information* it had when the case began. The government reacted to the dismissal of the transporting a minor with the intent to engage in criminal sexual activity charge by issuing another superseding indictment alleging a conspiracy to travel with intent to engage in illicit sexual conduct charge. Now the government has reacted to the successful motion to dismiss the FGM counts and the pending sound motions to dismiss the remaining count by superseding the indictment yet again based on the same information that it had over four years ago when the case began.

The government in this case has a stake in trying to obtain a conviction after all the prior dismissals. The government made this a highly publicized case, and the government has repeatedly been shown to have misunderstood the facts and law in this case. From having government officers swear that Dr. Attar could be identified in a video— when he could not—to having four different types of offenses dismissed, the government is attempting to breathe life into this case. Thus, the

government has a strong stake in trying to keep this case going and obtain a conviction at all costs.

## B. The government's conduct was unreasonable.

"As a general matter, a superseding indictment is potentially vindictive only if it 'add[s] additional charges or substitute[s] more severe charges based on the same conduct charged less heavily in the first indictment.'" *Ladeau*, 734 F.3d at 570, quoting *Suarez*, 263 F.3d at 480. And there is a greater likelihood of vindictiveness when the subsequent charges are based on conduct related to the conduct at issue in the original charge. *United States v. Groves*, 571 F.2d 450, 454 (9th Cir. 1978).

In this case, it was unreasonable for the government to issue a fourth superseding indictment, which is the *fifth* overall indictment in this case. The exact count that was remaining in the third superseding indictment and that was the subject of the three motions to dismiss did not survive the new indictment, which indicates that the government knew that the motions to dismiss that count would be successful. Instead, there were five additional charges that were all based on conduct related to the conduct at issue in the original indictment from 2017. The reason

motion practice exists is not so the government can file a new indictment to save face or correct its errors. A reasonable and ethical response to a motion is not convening a grand jury in order to procure another indictment. Yet the government did both of these things, and they were unreasonable and violated the named parties' rights. The government did indeed engage in vindictiveness based on the circumstances in this case.

### C. The government cannot rebut the presumption of prosecutorial vindictiveness.

"If the prosecution can show that the additional charges were not brought earlier because they were based on new evidence, it will successfully rebut a showing of vindictiveness." *Suarez*, 263 F.3d at 480. Circumstances such as "governmental discovery of previously unknown evidence," "previous legal impossibility," prior unavailability of the grand jury, or inexperience of the prosecutor may suffice to rebut a presumption of vindictiveness. *Bragan*, 249 F.3d at 482. Statements that a prosecutor "committed a mistake" do not. *Id*.

In the instant matter, the charges are based on the same evidence and allegations as the prior indictments. The only substantive event that has happened between the latest two indictments is that the named parties successfully diminished the government's case to one lone count,

with multiple credible motions filed to dismiss that remaining count. There is no reason to believe that the government's view of this matter changed significantly before the fourth superseding indictment, given that it had already had all the relevant evidence that supported the additional charges well before procuring the original indictment over four years ago. See *Ladeau*, 734 F.3d at 568; *Goodwin*, 457 U.S. at 381; *Suarez*, 263 F.3d at 480. In fact, the government originally charged Dr. Nagarwala and Dr. Attar each with one count of making a false statement, yet they removed that in a later superseding indictment. The first indictment also mentions evidence that was used as a basis for the fourth superseding indictment, showing that these charges could have been brought from the beginning.

The Assistant United States Attorney controls the charges issued in an indictment, and they have manipulated the charges in this matter to harass and prejudice Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala from the very beginning of this case. The named parties must now defend against these newly added allegations that are based on the same evidence and alleged course of conduct known to the government since the inception of the case. They also face the harassment and

continued prolongment of this case on charges that could have been brought from the very beginning. This case has been going on for almost half a decade, and this new indictment highlights the government's attempts to win this case at all costs. This cannot be countenanced in a court of law.

Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala have a right to file motions and not be retaliated against by the government bringing more charges against them. They should not have concerns about exercising their legal rights because they fear that the government will attempt to punish them for doing so. Yet that is precisely what has happened here. Because of the government's unlawful retaliation, the fourth superseding indictment must be dismissed.

## II. This Court has previously held that FGM is not a crime, so under the law of the case doctrine, the government cannot use FGM as a basis for the fourth superseding indictment.

This Court has already determined that FGM does not constitute a federal offense, yet the government used FGM as the basis for the charges listed in the fourth superseding indictment. The government uses the terms FGM, khatna, and khafd interchangeably throughout the indictment and continues to claim that FGM is a federal offense despite

this Court's prior decision. (RE 470, Page ID # 3763-3773.) The law of the case doctrine requires that "findings made at one stage in the litigation should not be reconsidered at subsequent stages of that same litigation." *Burley v. Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016). "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (internal citation and quotation marks omitted). The purpose of the doctrine is to prevent issues from being argued and reargued without end. *Edmonds v. Smith*, 922 F.3d 737, 739-740 (6th Cir. 2019). The rule "promotes the finality and efficiency of the judicial process." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816; 108 S. Ct. 2166; 100 L. Ed. 2d 811 (1988).

In this case, the law of the case doctrine precludes the government from continuing to base its charges on FGM. This Court has held that the FGM statute is unconstitutional, and Congress had no authority to pass the statute criminalizing FGM. (RE 370, Page ID # 3102-3103). Despite being well aware of this Court's prior ruling, the government blatantly ignores it throughout the indictment by making claims that FGM is a federal offense. (RE 470, Page ID # 3770.) Because this Court held that

Congress had no authority to enact the FGM statute, these statements in the indictment are false and these falsehoods were presented to the grand jury to seek the indictment. For these reasons, pursuant to the law of the case doctrine, the government cannot use FGM as a basis for its charges, and this Court must dismiss the fourth superseding indictment.

## CONCLUSION

A lawful and constitutional response to motions to dismiss does not encompass convening a grand jury to add additional charges. However, the government did just that, engaging in prosecutorial vindictiveness because it continued to be defeated in court. Here, the government did not just go back for a second bite at the apple—it is working its way through the entire orchard. The government issuing the fourth superseding indictment was unreasonable and unlawful because it had in its possession all the evidence used in the most recent indictment when the case first started over four years ago. Further, under the law of the case doctrine, the government cannot use FGM as a basis for its charges because this Court has already held that FGM is not a federal offense. Accordingly, Dr. Attar, Dr. Nagarwala, Mrs. Attar, and Ms. Dahodwala

respectfully request that this Court dismiss the fourth superseding indictment.

                            Respectfully submitted,

Dated: 05/20/2021              /s/MARY CHARTIER
                              Mary Chartier
                              Attorney for Fakhruddin Attar, M.D.


Dated: 05/20/2021              /s/SHANNON SMITH
                              Shannon Smith
                              Attorney for Jumana Nagarwala, M.D.


Dated: 05/20/2021              /s/MATTHEW R. NEWBURG
                              Matthew R. Newburg
                              Attorney for Farida Attar, Ph.D.


Dated: 05/20/2021              /s/BRIAN LEGGHIO
                              Brian Legghio
                              Attorney for Fatema Dahodwala

## Certificate of Service

I hereby certify that on May 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification to parties enrolled through the ECF system. A hard copy has been mailed via the United States Postal Service to those who are not enrolled.

/s/MARY CHARTIER
Mary Chartier
Chartier & Nyamfukudza, P.L.C.
2295 Sower Boulevard
Okemos, MI 48864
Phone: 517.885.3305
Fax: 517.885.3363
mary@cndefenders.com